UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THE GUARANTEE COMPANY OF NORTH
AMERICA USA, a Michigan corporation,

Court File No: 0:17-cv-4268

Plaintiff,

v.

ASSOCIATED BANK, N.A., a nationally
chartered bank headquartered in Wisconsin,
H & S CONTRACTING, INC., a Minnesota
corporation, TRACY A. HAZELTON, and
NATALIE L. HAZELTON,

**AFFIDAVIT OF CHRISTINA ZABEK
IN SUPPORT OF APPLICATION FOR
ENTRY OF DEFAULT JUDGMENT**

Defendants.

STATE OF <u>MICHIGAN</u>           )
                                                  ) ss.
COUNTY OF <u>OAKLAND</u>        )

I, Christina Zabek, being first duly sworn, state as follows:

1.      I am Surety Claims Examiner for The Guarantee Company of North America USA

("The Guarantee"), plaintiff in the above-captioned action.

2.      This affidavit is based on my personal knowledge or documents within my control

or possession.

3.      I submit this affidavit in support of The Guarantee's application for entry of default

judgment against H & S Contracting, Inc. ("H&S").

4.      On or about June 28, 2013, H&S executed a General Agreement of Indemnity

("Agreement") in contemplation of entering a surety relationship with The Guarantee. A copy of

the Agreement, with confidential information redacted, is attached as Exhibit 1.

5.      In the paragraph 4 of the Agreement, H&S promised to "indemnify [The Guarantee]

1

and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature" which The Guarantee may sustain, incur, or become liable for: by reason of having executed bonds requested by H&S, by making any investigation of any matter concerning those bonds, by prosecuting or defending any action in connection with those bonds, or by enforcing the Agreement.

6.      In consideration of the Agreement, The Guarantee issued payment and performance bonds on H&S's behalf ("Bonds") for several contracts to construct public improvements in North Dakota ("Bonded Contracts").

7.      The Guarantee received claims on the Bonds from H&S's subcontractors and suppliers and from project owners.

8.     As of December 28, 2017, The Guarantee had paid $3,643,467.68 to satisfy valid claims against the Bonds. The following chart summarizes The Guarantee's payments as of that date according to each relevant bond:

| Bond No. | Project Description | Project Owner | Paid under Payment Bond | Paid under Performance Bond |
|---|---|---|---|---|
| MS16114370 | Flood Risk Management FM.15.F1 | City of Fargo | $21,512.96 | $1,200.00 |
| MS16114379 | Upper Maple River Dam and Related Project | Maple Steele Joint Water Res. Dist. | $1,225.00 | $0.00 |
| MS16120660 | FM 14.12 Coulee's Crossing/Oak Creek | City of Fargo | $0.00 | $7,083.90 |
| MS16120663 | Water System Improvement District No. 20 | City of Harwood | $0.00 | $32,702.93 |
| MS16120664 | Improvement District UN-15-K1 | City of Fargo | $37,342.32 | $0.00 |
| MS16126832 | Sanitary Sewer, Water, Storm Sewer, & St. | Paces Lodging Corporation | $131,013.21 | $0.00 |
| MS16126833 | Water Improvement District #1287 | City of West Fargo | $51,567.82 | $0.00 |
| MS16126844 | Project #FM-15-A1: Levee Construction Southwood Cul-de-sac | City of Fargo | $53,211.59 | $23,821.45 |
| MS16126848 | Improvement District #UN-15-M1: Sanitary | City of Fargo | $7,700.00 | $0.00 |
| MS16126851 | Crushing & Stockpiling Class 13 Aggregate | Grant County | $134,439.27 | $0.00 |
| MS16126855 | 2016 Swan Buffalo Detention Dam Repairs | Maple River Water Resource District | $16,100.00 | $0.00 |
| MS16134660 | W-16-00029: Sanitary Sewer, Water, & Storm | City of Gwinner | $429,674.67 | $381,451.12 |
| MS16134661 | Sanitary Sewer, Water, & Street Improvements | City of Milnor | $214,383.48 | $43,387.22 |
| MS16134666 | Sheyenne River Flood Protection Levee E | City of Lisbon | $714,025.48 | $651,172.14 |
| MS16134673 | Sanitary Sewer, Water Main, Storm Sewer BN 16 G1 | City of Fargo | $404,231.88 | $112,227.60 |
| MS16134685 | Upper Swan Creek Channel Improvements | Maple River Water Resource District | $71,050.94 | $24,912.50 |
| MS16134694 | 2016 Cass County Drain #23 Improvements | North Cass Water Resource District | $0.00 | $78,030.20 |

9.     As of December 28, 2017, The Guarantee had sustained consulting expenses in the amount of $26,342.36 to meet its obligations under the Bonds.

10.     As of December 28, 2017, The Guarantee had received $1,280,258.97 from project owners on the Bonded Contracts pursuant to equitable subrogation or takeover agreements. In

calculating its damages, The Guarantee deducts this amount from losses it claims under the Bonds.

11.    The Guarantee has not received reimbursement from H&S or any co-indemnitor for The Guarantee's losses under the Bonds.

12.    As of the date of this affidavit, The Guarantee has suffered a net loss of at least $2,389,551.07, not including attorney fees, as a result of issuing the Bonds.

13.    The Guarantee has demanded H&S indemnify The Guarantee for losses incurred as a result of issuing the Bonds.

14.    H&S has failed to indemnify The Guarantee for its losses.

15.    As of the date of this affidavit, The Guarantee damages claim against H&S pursuant to The Guarantee's Complaint is in the amount of $2,389,551.07, plus costs in this action.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Dated: ___1/30/18___

Christina Zabek

Subscribed and sworn to before me this 30th
day of January, 2018.

_____
Notary Public

CHRISTINE LYNN KAROW
Notary Public, State of Michigan
County of Oakland
My Commission Expires Feb. 27, 2021
Acting in the County of _____



## GENERAL AGREEMENT OF INDEMNITY

WHEREAS, the UNDERSIGNED may from time to time request The Guarantee Company of North America or The Guarantee Company of North America USA and/or any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and/or reinsurers (hereinafter collectively called SURETY) to execute as surety or guarantor, or procure the execution of, certain surety bonds, undertakings, guaranties, stipulations or other obligatory agreements (all such agreements being hereinafter referred to as BOND or BONDS); and

WHEREAS, the UNDERSIGNED by executing this Agreement represent that they have a material and beneficial interest in the obtaining of such BONDS by each of the CONTRACTORS.

NOW, THEREFORE, in consideration of the execution of any one or more such BONDS, the UNDERSIGNED, for themselves, their respective personal representatives, successors and assigns, jointly and severally, covenant and agree, with respect to all BONDS heretofore or hereafter executed for the CONTRACTOR, that:

1.      This Agreement binds each UNDERSIGNED to SURETY with respect to all BONDS executed or procured for any UNDERSIGNED executing this Agreement and for any CONTRACTOR as defined below.  If any BOND or BONDS shall be executed or procured for any Joint Venture to which any CONTRACTOR is or may become a party, the liability and obligations of the UNDERSIGNED to SURETY shall be the same as if such BOND or BONDS had been executed for the CONTRACTOR acting alone, notwithstanding any agreement between or among the Joint Venturers. CONTRACTOR as used in this Agreement shall mean: any UNDERSIGNED; any partnership, association, corporation, successor, assign, affiliate, any related entity, subsidiary and/or division of the UNDERSIGNED, whether now existing or hereafter formed or acquired; and any other person who obtains BONDS from SURETY at the request of any UNDERSIGNED.  BONDS as used in this Agreement shall include any BOND or BONDS written for the CONTRACTOR operating under its legal name or any fictitious, assumed or trade name.

2.      If SURETY executes or procures execution of a Bid or Proposal BOND or Consent of Surety to the issuance of BONDS, it may decline to execute or procure execution of any BONDS required in connection with any award made under the proposal for which such Bid or Proposal BOND or Consent of Surety to the issuance of BONDS is given; and such declination shall not diminish or alter the liability of the UNDERSIGNED with respect to such Bid or Proposal BOND or Consent of Surety.

3.      This Agreement shall apply to any and all BONDS requested by the CONTRACTOR, whether such BONDS were executed prior to, on or after the date of this Agreement; and, further, this Agreement shall apply to any and all BONDS executed, or the execution of which has been procured, by SURETY for any CONTRACTOR, whether or not there shall be any written application therefor executed by one or more of the UNDERSIGNED.

4.      The UNDERSIGNED shall indemnify SURETY and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which SURETY may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement.  In the event SURETY advances funds for the benefit of any CONTRACTOR in connection with work subject to a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT) and/or for the discharge of obligations incurred in connection with a BONDED CONTRACT, such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR.

Initials of Undersigned: _____

GAI – Rev. 02/20/13                                                                                                           Page 1

Excellence, Expertise, Experience ... Every time

The Guarantee Company of North America USA
One Towne Square, Suite 1470
Southfield, Michigan 48076
Tel  248-281-0281  •  Fax  248-750-0431  •  1-866-328-0567
gcna.com

5.      Upon SURETY's reasonable belief that it may incur a loss on a BOND or BONDS, SURETY may demand and, upon SURETY's demand, the UNDERSIGNED shall deliver over to SURETY collateral security acceptable to SURETY to cover any contingent losses and any subsequent increase thereof.  SURETY shall return to the UNDERSIGNED any unused portion of collateral upon termination of the liability of SURETY on all BONDS and satisfaction by the UNDERSIGNED of its obligations to SURETY under this Agreement.

6.      a)      All payments received for or on account of a BONDED CONTRACT, and all monies due and to become due under any such contract or contracts, whether in the possession of the CONTRACTOR or otherwise, are trust funds for the benefit and payment of all persons to whom the CONTRACTOR incurs obligations in the performance of such contract or contracts for which SURETY would be liable under any BOND or BONDS. If SURETY discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds. CONTRACTOR shall, upon demand of SURETY and in implementation of the trust hereby created, open an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for deposit of such trust funds, and shall deposit therein all monies received pursuant to such contract. Withdrawals from such account shall be by check or similar instrument signed by the CONTRACTOR and countersigned by a representative of SURETY.  Said trust or trusts shall terminate on the payment by the CONTRACTOR of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur.

b)      CONTRACTOR agrees and hereby expressly declares that title to all materials and supplies specially ordered or fabricated for any BONDED CONTRACT shall be held in trust for the benefit of the owner of the improvement being constructed or SURETY, as their interests may appear, and that possession of such material shall be subject to the direction of such owner and SURETY.

7.      SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED. Vouchers or other evidence of payments made by SURETY shall be prima facie evidence of the fact and amount of the liability of the UNDERSIGNED to SURETY.

8.      In the event SURETY exercises an option or right to terminate any BOND, and such termination causes a claim on or a forfeiture of such BOND due to the UNDERSIGNED's failure to satisfy its obligations, under the BOND or otherwise, to replace the BOND, the UNDERSIGNED's indemnity obligations to SURETY under this Agreement are not amended or modified.  The UNDERSIGNED hereby agree that they shall not allege or assert any claim or defense against SURETY that such BOND termination and/or claim payment on such terminated BOND was unnecessary, unreasonable, made in bad faith, not required, or otherwise inappropriate or not permissible.

9.      a)      The UNDERSIGNED shall furnish to SURETY such information as it may request concerning their financial condition, the status of work under any contract, bonded or unbonded, the condition of the performance of any such contract, and the payment of obligations incurred in connection therewith, and the UNDERSIGNED hereby authorize those with whom such contracts are made to furnish to SURETY all information concerning such contracts and the work thereunder.   SURETY may from time to time, in its sole discretion, examine and copy the books, accounts, and records of the UNDERSIGNED and inspect the work at any project (whether bonded or unbonded).

b)      Upon request of SURETY, the UNDERSIGNED shall provide reports to SURETY regarding all construction or service contracts (whether bonded or unbonded) in such detail and in such format as may be reasonably requested by SURETY. Each UNDERSIGNED represents, warrants, and covenants that all information provided in, or in connection with, any application for any BOND or BONDS, or in connection with this Agreement, is complete and accurate.  SURETY may obtain information concerning the affairs and operations of the UNDERSIGNED and any transaction between or among them from any banks, depositories, obligees of the BOND or BONDS, materialmen, supply houses, credit reporting agencies and any other person.  Each UNDERSIGNED represents and warrants that any financial statement submitted by or on its behalf to SURETY, whether prior to the date of the Agreement or in the future, is complete and correct and fairly presents the financial condition of such UNDERSIGNED as of the date of such financial statement and the results of the operations of such UNDERSIGNED for the periods covered by such statements, all in accordance with generally accepted accounting principles consistently applied.

Initials of Undersigned: _T.H._ 

GAI – Rev. 2/20/13

THE GUARANTEE™

10.    a)    The UNDERSIGNED hereby grant to SURETY a security interest in, and acknowledge and agree that SURETY has, and shall continue to have, a continuing security interest in any and all of the UNDERSIGNED's:

(i)    Receivables, whether now existing or hereafter arising, however evidenced or acquired, and whether the UNDERSIGNED now has or hereafter acquires any rights therein. (RECEIVABLES means and includes accounts, accounts receivable, contract rights (including bonded and unbonded contracts), instruments, securities, investment property, notes, drafts, acceptances, documents, leases, chattel paper, deposit accounts, letters of credit, letter-of-credit rights, general intangibles, patents, copyrights, trademarks, tradenames, licenses, franchises, goodwill, judgments, awards, causes of action (whether in contract, tort or otherwise), tax refunds and all other forms of obligations owing to the UNDERSIGNED, and all of the UNDERSIGNED's rights to any merchandise, including (without limitation) any returned or repossessed goods and the right of stoppage in transit which is represented thereby);

(ii)    Inventory, whether now owned or hereafter acquired and wherever located, and all documents of title at any time evidencing or representing any part thereof. (INVENTORY means and includes all goods which are leased by UNDERSIGNED as lessor, are held for sale or lease, or are furnished or to be furnished by the UNDERSIGNED under contracts of service, or which are raw materials, work-in-process, finished goods, materials or supplies of any nature used or usable in connection with the manufacture, processing, demonstrations, promotion, supply, servicing, storing, packing, shipping, advertising, selling, leasing or furnishing of such goods or any constituents or ingredients thereof, and returned or repossessed goods);

(iii)    Equipment, whether now owned or hereafter acquired and wherever located. (EQUIPMENT means and includes equipment, machinery, tools, trade fixtures, furniture, furnishings, office equipment, leasehold improvements and motor vehicles and all goods for use in the UNDERSIGNED's business, together with all parts, equipment, accessories and attachments relating to any of the foregoing);

(iv)    Records, including supporting evidence and documents relating to any of the above-described property, including, without limitation, written applications, credit information, account cards, payment records, correspondence, delivery and installation certificates, invoice copies, delivery receipts, notes and other evidences of indebtedness, insurance policies and certificates and the like, together with all books of account, ledgers, cabinets and safe deposit boxes in which the same are reflected or maintained, whether now existing or hereafter arising and wherever located;

(v)    Accessions and Additions to, and substitutions and replacements of, any and all of the foregoing, whether now existing or hereafter arising or attaching;

(vi)    Proceeds and Products of the foregoing, all insurance of the foregoing, and all proceeds thereof, whether now existing or hereafter arising; and

(vii)    All Subcontracts, (whether bonded or unbonded) and all Surety Bonds securing the performance of, or the discharge of obligations incurred in connection with, such subcontracts, all of the foregoing collectively referred to as the COLLATERAL.

b)    The UNDERSIGNED represent and warrant that, except as otherwise disclosed to SURETY in writing: (i) the principal place of business and chief executive office of each UNDERSIGNED and the office where each UNDERSIGNED keeps its records concerning the COLLATERAL, and all originals of all chattel paper which evidence the COLLATERAL are located at the address set forth below the signature of each such UNDERSIGNED; (ii) the UNDERSIGNED have exclusive possession and control of the equipment; and (iii) the tax identification number and name of each UNDERSIGNED set forth in the signature pages hereof are complete and correct.

c)    The UNDERSIGNED shall notify SURETY at least 60 days in advance of any change in any UNDERSIGNED's name, tax identification number, principal place of business, chief executive office or the office where it keeps its records concerning the COLLATERAL and all originals of all documents, instruments and chattel paper which evidence COLLATERAL. The UNDERSIGNED shall hold and preserve such records, documents, instruments, and chattel paper and will permit representatives of SURETY at any time during normal business hours to inspect and make abstracts from such records, documents, instruments, and chattel paper.

Initials of Undersigned: _____

THE GUARANTEE™

      d)     Without SURETY's prior written consent, which shall not be unreasonably withheld, the UNDERSIGNED shall not, nor permit any of their subsidiaries to: (i) sell, assign by operation of law or otherwise, or otherwise dispose of any of the assets (whether or not constituting COLLATERAL) of their respective businesses, including but not limited to shares representing stock in their respective businesses and subsidiaries, either in whole or in part, or any interest therein except in the ordinary course of business or (ii) merge or consolidate with any other company, including any other company directly or indirectly controlled by, controlling or under common control with the UNDERSIGNED.

      11.     This Agreement constitutes both a security agreement to SURETY and also a financing statement, in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of this Agreement shall be solely at the option of SURETY, and may be filed by SURETY without in any way subrogating, restricting or limiting the rights of SURETY under this Agreement, under law or in equity. The failure to file this Agreement shall not release or excuse any of the obligations of the CONTRACTOR or the UNDERSIGNED under this Agreement. SURETY is authorized to prepare and file financing statements and amendments thereto in any filing office in any Uniform Commercial Code jurisdiction consistent with security interests granted under this Agreement.

      12.     In addition to the security interest granted hereunder, the UNDERSIGNED hereby assign, transfer, and convey to SURETY all of the rights and property that constitute the COLLATERAL. The assignment is for the purpose of enabling SURETY to take immediate possession of and to use any COLLATERAL upon the happening of an EVENT OF DEFAULT to complete the performance of the obligations of the UNDERSIGNED under a BONDED CONTRACT and to make payment of obligations incurred by the UNDERSIGNED in the performance of a BONDED CONTRACT. The assignment is an absolute assignment of COLLATERAL relating to each BONDED CONTRACT and no further notice or other action by SURETY is required. The possession and use, for the purposes set forth in this Section 12, of any assets assigned to SURETY shall not be deemed to be a foreclosure or a retention in lieu of foreclosure under the security interest granted to SURETY in Section 10 of this Agreement.

      13.     The following, or any of them, shall constitute an EVENT OF DEFAULT hereunder:

      a)     the CONTRACTOR is declared to be in default in the performance of a contract (whether bonded or unbonded);

      b)     the UNDERSIGNED shall breach any terms of this Agreement;

      c)     the UNDERSIGNED files a petition in voluntary bankruptcy or seeks relief under any provision of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against it under any such law;

      d)     a receiver, liquidator, custodian or trustee of the UNDERSIGNED, or of all or any of the property of the UNDERSIGNED, is appointed by court order and such order remains in effect for more than 30 days; or an order for relief is entered with respect to the UNDERSIGNED or the UNDERSIGNED is adjudicated as bankrupt or insolvent, or any of the property of the UNDERSIGNED is sequestered by court order and such order remains in effect for more than 30 days; or a petition is filed against the UNDERSIGNED under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within 30 days after such filing;

      e)     any change or threat of change in the character, identity, control, beneficial ownership or existence of CONTRACTOR; or

      f)     a payment by SURETY on any BOND.

Initials of Undersigned: _T.H._

THE GUARANTEE™

The rights, powers and remedies afforded SURETY by the terms of this Agreement are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against the UNDERSIGNED or others whether by the terms of any other agreement or by operation of law.  SURETY shall not incur any liability to any of the UNDERSIGNED in the exercise of the rights granted by this Agreement except for deliberate and willful malfeasance.

18.     The UNDERSIGNED hereby agree to execute such documents and agreements as shall be reasonably necessary or appropriate to the exercise of the rights of SURETY under this Agreement.  The UNDERSIGNED hereby irrevocably constitute and appoint SURETY as their true and lawful attorney with the right, but not the obligation, to exercise all of the rights of the UNDERSIGNED assigned, transferred and conveyed to SURETY in this Agreement, hereby giving and granting to SURETY full power and authority to make, execute, endorse and deliver any agreements for the full protection intended to be given to SURETY hereunder as the UNDERSIGNED might or could do.

19.     This Agreement, its riders and addenda may be executed in separate counterparts, none of which need contain signatures of all parties, each of which shall be deemed an original, and all of which taken together constitute one and the same instrument.

20.     Except as hereinafter in this Section provided, any of the UNDERSIGNED may, upon written notice sent by registered or certified mail, return receipt requested, to The Guarantee Company of North America, USA, One Towne Square, Suite 1470, Southfield, Michigan  48076, to be effective not less than 20 days after receipt, limit their obligations under this Agreement to BONDS executed by SURETY for the CONTRACTOR prior to the effective date of such notice; provided, however, that such notice shall not be effective with respect to any BOND or BONDS executed after such date (i) upon the award of a contract to the CONTRACTOR on a bid or proposal in respect of which SURETY has executed and delivered a bid or proposal BOND prior to such date, or (ii) which SURETY has become committed to execute prior to such date, or (iii) in connection with any claim, lien, litigation, or other matter involving or relating to any BOND or BONDS executed prior to such date or thereafter executed as hereinbefore in (i) or (ii) provided.  Such limitation of the obligations of any of the UNDERSIGNED shall not operate to limit the obligations of, or release, the rest of the UNDERSIGNED whether or not they have notice or knowledge thereof.

21.     With respect to any proceeding brought by SURETY against any UNDERSIGNED arising out of or by reason of this Agreement, each UNDERSIGNED hereby submits to jurisdiction in the State of Michigan, in each jurisdiction where a loss under or in respect of any BOND or BONDS occurs, and in each jurisdiction where an UNDERSIGNED resides, is domiciled, is doing business or is found.  With respect to any proceeding brought by SURETY on this Agreement in a jurisdiction in which one or more UNDERSIGNED resides, is domiciled, is doing business or is found, each UNDERSIGNED who is not in the jurisdiction hereby designates each UNDERSIGNED who is in such jurisdiction as his agent to receive on his behalf service of process in such action. With respect to any proceeding brought against SURETY and SURETY desires to join any UNDERSIGNED by reason of the undertakings in this Agreement, each UNDERSIGNED agrees that he will, upon written notice of SURETY to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of such UNDERSIGNED's choice.  If any UNDERSIGNED fails upon such a notice to appear, such UNDERSIGNED hereby designates the Secretary of the State or territory in which proceedings are pending as his agent for the service of process in any such proceeding.

22.     The rights and remedies afforded SURETY by the terms of this Agreement may not be waived or modified unless agreed to in a writing executed by SURETY.  There have been no oral or other agreements as a condition precedent or inducement to the execution of this Agreement by any of the UNDERSIGNED.

Initials of Undersigned: _T.H._

THE GUARANTEE™

23.    Neither this Agreement nor any rights or obligations of the UNDERSIGNED hereunder shall be assigned without the written consent of SURETY endorsed hereon and signed by an officer of SURETY.

24.

DATED this 6th            day of June              , 20 13          .

THE UNDERSIGNED REPRESENT TO SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

H & S Contracting, Inc.

_____
Tracy A. Hazelton, President                          (L.S.)

Witness/Attest Brent Syster, Corporate Secretary

Tax Payer ID# ████████

1506 Main Ave., Ste. 105 Moorhead, MN        1506 Main Ave., Ste. 105 Moorhead, MN

Street or P.O. Box      City          State      Street or P.O. Box       City        State

_____
Tracy A. Hazelton, Individually                        (L.S.)

Witness/Attest  Richard Bakken – Treasurer

Tax Payer ID# ████████

1506 Main Ave Ste 105, Moorhead, MN        6507 1st St., N., Moorhead, MN

Street or P.O. Box      City          State 56560     Street or P.O. Box       City        State

_____
Natalie L. Hazelton, Individually                      (L.S.)

Witness/Attest Richard Bakken – TREASURER

Tax Payer ID# ████████

1506 Main Ave Ste 105, Moorhead, MN        6507 1st St., N., Moorhead, MN

Street or P.O. Box      City          State 56560     Street or P.O. Box       City        State

Initials of Undersigned: _T.H._____  _M_

GAI – Rev. 2/20/13                                              Page 7

THE GUARANTEE™

State of **Minnesota** } ss:

County of **Clay**

On this **28** day of **June** year **2013** , before me personally appeared

Tracy A. Hazelton ,

to me known, and known to me to be the individual(s) who executed the foregoing agreement, and acknowledged and said that he/she/they executed the same.

RICHARD G. BAKKEN
NOTARY PUBLIC—MINNESOTA
My Commission Expires JAN. 31, 2017

Notary Public _____

Commission expires **01/31/2017**

*Individual Acknowledgement*

---

State of **Minnesota** } ss:

County of **Clay**

On this **28** day of **June** year **2013** , before me personally appeared

Natalie L. Hazelton ,

to me known, and known to me to be the individual(s) who executed the foregoing agreement, and acknowledged and said that he/she/they executed the same.

RICHARD G. BAKKEN
NOTARY PUBLIC—MINNESOTA
My Commission Expires JAN. 31, 2017

Notary Public _____

Commission expires **01/31/2017**

*Individual Acknowledgement*

---

State of _____ } ss:

County of _____

On this _____ day of _____ year _____ , before me personally appeared

_____ ,

to me known, and known to me to be the individual(s) who executed the foregoing agreement, and acknowledged and said that he/she/they executed the same.

Notary Public _____

Commission expires _____

*Individual Acknowledgement*

---

State of _____ } ss:

County of _____

On this _____ day of _____ year _____ , before me personally appeared

_____ ,

to me known, and known to me to be the individual(s) who executed the foregoing agreement, and acknowledged and said that he/she/they executed the same.

Notary Public _____

Commission expires _____

*Individual Acknowledgement*

---

State of _____ } ss:

County of _____

On this _____ day of _____ year _____ , before me personally appeared

_____ ,

to me known, and known to me to be the individual(s) who executed the foregoing agreement, and acknowledged and said that he/she/they executed the same.

Notary Public _____

Commission expires _____

*Individual Acknowledgement*

State of     <u>Minnesota</u>     } ss:

County of     <u>Clay</u>     }

On this     <u>28</u>     day of     <u>June</u>     year <u>2013</u> , before me personally appeared

Tracy A. Hazelton
                                                                ,

to me known, who, being by me duly sworn, did acknowledge and say _____

that he/she is the     President                                 of the    _____

H & S Contracting, Inc.
                                            , the corporation

which executed the foregoing agreement; that he/she knows the seal of the corporation; that the seal affixed to the foregoing agreement is such corporate seal; that it was so affixed by order of the Board of Directors of the corporation, and that he signed his name to the foregoing agreement by like order.

RICHARD G. BAKKEN
NOTARY PUBLIC—MINNESOTA
My Commission Expires JAN. 31, 2017

Notary Public _____

Commission expires     01/31/2017

---

State of _____ } ss:

County of _____ }

On this _____ day of _____ year _____ , before me personally appeared

_____ ,

to me known, who, being by me duly sworn, did acknowledge and say _____

that he/she is the _____ of the _____

_____ , the corporation

which executed the foregoing agreement; that he/she knows the seal of the corporation; that the seal affixed to the foregoing agreement is such corporate seal; that it was so affixed by order of the Board of Directors of the corporation, and that he/she signed his name to the foregoing agreement by like order.

Notary Public _____

Commission expires _____

---

State of _____ } ss:

County of _____ }

On this _____ day of _____ year _____ , before me personally appeared

_____ ,

to me known, who, being by me duly sworn, did acknowledge and say _____

that he/she is the _____ of the _____

_____ , the corporation

which executed the foregoing agreement; that he/she knows the seal of the corporation; that the seal affixed to the foregoing agreement is such corporate seal; that it was so affixed by order of the Board of Directors of the corporation, and that he/she signed his/her name to the foregoing agreement by like order.

Notary Public _____

Commission expires _____

*Corporation Acknowledgement*